Benedict Bros. v. Davidson Co.

*BENEDICT BROTHERS *et al. v.* DAVIDSON COUNTY *et al.*

(*Nashville.*   December Term, 1901.)

1.  **TAXATION.**  Constitutional exemption—The term "produce of the State" embraces, what.

The term "produce of the State" as used in article 2, section 30, of the constitution of the State, exempting from taxation all articles manufactured from "the produce of the State" embraces whatever is produced or grown in the State, or is the yield of the State, whether it be crops or timber or coal or iron or marble or wood or any other article which may be treated as produced or grown within the State from or on the soil, or may be found in the soil.  (*Post, pp.* 187-188.)

Constitution construed:   Art. 2, sec. 30.

2.  **SAME.**  Same.  Logs and lumber are exempt as "articles manufactured from the produce of the soil," when.

Logs grown on the soil of the State, when in the hands of and upon the yard of the sawyer or mill-operating manufacturer, ready to be sawed, and the lumber upon the yard, cut from said logs, are articles manufactured from the produce of the State, within the meaning of article 2, section 30 of the constitution of the State, exempting from taxation all articles manufactured from the produce of the State.  (*Post, pp.* 188-191.)

Constitution construed:   Art. 2, sec. 30.

---

### FROM DAVIDSON.

---

*This case was decided at the December term, 1901, and the opinion filed for publication during that term, but for some reason was not officially reported by the then reporter. It is now published by the order of the court.—Reporter.

Appeal from Chancery Court of Davidson County.—
H. H. COOK, Chancellor.

JOHN J. VERTREES, W. O. VERTREES and MORTON B.
HOWELL, for Benedict Bros.

K. T. McCONNICO and HILL McALISTER, for the City
of Nashville.

J. A. CARTWRIGHT and SAMUEL N. HARWOOD, for
Davidson County.

The ATTORNEY-GENERAL and T. B. JOHNSON, for the
State.

MR. JUSTICE WILKES delivered the opinion of the
Court.

This cause was heard upon demurrer in the court
below. The demurrer was overruled, and the defend-
ants have appealed to this court, and assigned errors.

The defendants are the county of Davidson, the
mayor and city council of Nashville, and Len K. Hart,
trustee of Davidson county. The case, as made by the
bill, is that Benedict Bros. are residents of Davidson
county, and are now, and have been for twenty years
past, manufacturers of and dealers in lumber; their
place of business being in Nashville, Tennessee. They
were called upon by the tax assessors for a statement
of personalty taxable in their hands on the 10th of

January, 1900.  They refused to list as taxable a quantity of logs and lumber which they had in their yards on that day, which lumber had been manufactured from logs cut from their own lands in the State of Tennessee, and from logs which had been bought by them from other persons owning lands in the State, and upon which the logs grew.  Thereupon the tax assessors for the county and city assessed complainants as owning personalty consisting of lumber and logs to the amount of $18,000.  The State tax was paid under protest by complainants, and the present suit is to recover back the tax thus paid for State purposes from the trustee, and to enjoin the collection of the taxes assessed for county and municipal purposes.  It is claimed by complainants that the property thus assessed is exempt from taxation, under sections 28 and 30 of article 2 of the constitution of Tennessee.  The assessment law in force at the time of this assessment is chapter 435 of the Acts of 1899, and by section 2, subsection 5, of the act, it is provided that "all growing crops, of whatever nature or kind, the direct product of the soil of this State in the hands of the producer, or his immediate vendee, and manufactured articles from the produce of this State in the hands of the manufacturer, shall be exempt from taxation."  Section 28, of article 2, of the constitution of the state, contains the following words: "All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities or towns, and used exclu-

sively for public or corporation purposes, and such as may be held or used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars worth of personal property in the hands of each taxpayor, and the direct product of the soil in the hands of the producer, and his immediate vendee." Section 30 of the same article is as follows: "No article manufactured of the produce of this State shall be taxed otherwise than to pay inspection fees." So far as these provisions relate to the direct product of the soil, in the hands of the producer and his immediate vendee, and to articles manufactured of the product of this State, they are mandatory and self-executing. Complainants claim exemption from taxation upon the property assessed under and by virtue of each of these provisions of the constitution as well as the terms of the act of 1899. Without construing the language and provisions of section 28, above set out, which we think not necessary in this case, we proceed to inquire whether the property thus assessed is exempt under the provisions of section 30.

It is difficult to give a correct definition of the terms "articles manufactured of the produce of the State." It is evident that they are not the same as the direct product of the soil, in the hands of the producer or his immediate vendee. The direct product of the soil is necessarily in every instance the produce of the State, but it does not follow that the produce of the State is confined to the direct products of the soil. And while

the direct product of the soil is necessarily embraced within the terms "produce of the State," it may not fall within the definition of "an article manufactured of the produce of the State." To illustrate: Wheat is a direct product of the soil, but it is not an article manufactured of the produce of the State. Flour made of wheat grown upon Tennessee soil is an article manufactured of the produce of the State, but it is not a direct product of the soil, though manufactured out of the direct product of the soil. Wheat grown on Tennessee soil is exempt, under the provision of section 28, supra, while flour manufactured of such wheat is not, but is exempt only under section 30. It is worthy of note that the exemption contained in section 30, of "articles manufactured of the produce of the State," originated with the constitution of 1796, and was brought forward into the constitutions of 1834 and 1870 in substantially the same language, while the exemption in section 28 of the direct products of the soil, in the hands of the producer or his immediate vendee, originated with, and is first found in the constitution of 1870. It is a fair inference that our constitution makers of 1870 did not consider the terms as the equivalent of each other, and that they intended, by incorporating both provisions in the constitution of 1870, to make an exemption under section 28, which had not previously existed under section 30. We are of opinion that the term "produce of the State" is intended to embrace whatever is produced or grown in the State, or is the

yield of the State, whether it be crops or timber or coal or iron or marble or wood, or any other article which may be treated as produced or grown "within the State from or on the soil, or may be found in the soil. It must be noted, however, that it is not "the produce of the State," which is exempt under section 30, but "articles manufactured of such produce." So that it becomes necessary to decide what is an article manufactured, within the sense of this provision. The ordinary definitions of the word "manufactured" can aid us but little. There will be no dispute but that an article (for example, a piece of furniture), when reduced to its finished state, as a table, would, in the hands of the manufacturer, come under the head of a "manufactured article," after it had gone through the many stages to reach that condition. And the troublesome question is, when did it become manufactured? Originally the tree out of which the material came was growing in the forest. This tree with saw or ax, was felled to the ground. Next it was cut into lengths or logs, and in that shape became a merchantable timber. These were transported to the mill, and sawed into rough lumber. This rough lumber was afterwards ripped into desirable sizes and lengths. Then the material went through a planing or smoothing process; then a process of joining or adjusting the pieces one to another; then a process of being fastened in shape; next, a polishing process, it may be an oil or varnish finish; and other manipulations known to the trade for converting the crude

material into handsome and useful shapes and appearances, ultimately designed as "furniture;" and all these different processes may have been conducted by different parties. Now, at what stage of this process does the article become exempt as a manufactured article? Evidently the purpose of the exemption is to encourage manufacturing, and the pertinent question is, shall a construction be placed upon the clause which virtually says that, when the last finishing strokes have been put upon the articles, it becomes exempt in the hands of the manufacturer, and not until then, or shall we say the exemption begins when the first act of manufacturing is done, or at some intermediate stage? Did the makers of the constitution mean to say to the manufacturer: "Your product shall be exempt in your hands if by your good fortune it can reach the finished stage, but, if by my good fortune and the aid of my machinery I can catch the material in any intermediate stage between the log and the table, you must pay taxes upon it. In other words, you, the manufacturer, and you, the tax gatherer, shall start on equal terms when the log is placed on the yard of the mill manufacturer. It must then be a race of diligence between you from that time to the time the table is finished and ready for market. If you, the manufacturer, can by any means, open or secret, convert the log into the table before the tax gatherer catches you, then it is exempt; otherwise it is not."

We cannot think this is a correct view. The pro-

cess of manufacturing begins at least when the log is on the yard for the purpose of being sawed. When it is sawed into rough lumber, and when that is ripped into sizes and lengths, and when these are fastened together, and fitted one piece to another, and when the article is being polished, glazed, rubbed, or varnished, in all the stages from the time the log is on the yard until it appears finished by the manufacturer, the exemption attaches and continues. Rough lumber and logs are articles of commerce, and for many purposes they are, in this condition, finished, and are not intended to be further manipulated; and so, also, is lumber which has been ripped into lengths or dressed for use. Logs are used in house or bridge building without further change. The exact question in this case is whether logs, in the hands of the mill-operating manufacturer, and the lumber, when cut by him into larger or smaller shapes and pieces, are exempt. We are not dealing with a condition where the owner of the tree has felled it, and cut it into lengths to be shipped to a foreign market and sold as logs; nor, on the other hand, are we dealing with the case of the same owner who may have felled his trees, and cut them into lengths in the forest, with a view of hauling them to his own mill, and then converting them by sawing them into lumber. Neither of these cases is presented. But we have the case of logs upon the yard of the sawyer or mill-operating manufacturer, ready to be sawed, and lumber upon the yard, already sawed. Nor are we dealing with the question of the taxability of the

Benedict Bros. v. Davidson Co.

finished article after it has left the hands of the manufacturer, and gone into the hands of the dealer or consumer. We express no opinion as to the application of the constitutional exemption to any of these conditions, as they are not involved in the present case. We do not consider the cases cited from California in point, as they turn upon different facts and different constitutional provisions. Nor do we find any other authorities in conflict with this holding.

We are of opinion that, under the facts in this record, the logs upon the yard, in the hands of the mill-operating manufacturer and his property, and lumber rough and smooth, cut by him from such logs grown on Tennessee soil, are articles manufactured from the produce of the State, and exempt under the provisions of section 30, article 2, of the constitution; and the demurrer was therefore properly overruled, and complainants, under the allegations of their bill, are entitled to recover back the taxes paid the State, and to perpetually enjoin the taxes assessed by the county and city; and the decree of the court below is therefore affirmed, and the cause remanded, at costs of defendants for the appeal.

### DISSENTING OPINION.

MR. JUSTICE BEARD delivered the following dissenting opinion:

While barely conceding that the majority may be right in their holding that lumber sawed from logs which are the produce of the State may fall within the class of articles exempt from taxation under section 30

of article 2 of the constitution, I altogether dissent from the holding that the logs themselves, though in the hands of the sawyer, can in any proper sense be called "articles manufactured for use," and thus be given the benefit of the exemption.   Burrill defines "to manufacture" thus:   "The process of making a thing by art." And  Abott  gives the meaning of the term "manufacture" as "whatever is made by human labor, either directly or through the instrumentality  of  machinery." The definition of Webster is:   "To make or fabricate from raw materials by the hand, by art, or machinery, and work into forms convenient for use."   Worcester, in effect, gives the term the same meaning.   All these definitions imply that by a combination of skill and labor the raw or crude material has taken on a new form, convenient for use. I think the popular acceptance of the term is the same as that of the lexicographers, and that a layman of ordinary intelligence in the use of words would be surprised to find that one which he had long applied to articles, the output of skilled workmanship, also embraces "saw logs," in whosesoever hands they chanced to be.   Upon examination it will be found that the courts have applied to the term the same  meaning  as  have  lexicographers  and  the  plain people.   In *Evening Journal Ass'n* v. *State Board of Assessors,* 47 N. J. Law, 38, 54 Am. Rep., 114, the court embodies in the text of its opinion, the definition given in Brande's Encyclopedia, as follows:  "Mr. Brande defines "manufacture" as a term employed to designate

the changes or modifications made by art or industry in the form or substance of material articles, in the view of making them capable of satisfying some want or desire of man; and manufacturing industry to consist in the application of art, science, or labor, to bring about certain changes or modifications of already existing material." In *Carlin* v. *Assurance Co.*, 57 Md., 526, 40 Am. Rep., 440, it is said: "Whilst, from its derivation, the primary meaning of the word 'manufacture' is making with the hand, this definition is too narrow for its present use. Its meaning has expanded as workmanship and art have advanced, so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions, or new and specific combinations, whether from the direct action of the human hand, from chemical processes divined and directed by human skill, or by the employment of machinery . . . are now commonly designated as manufactured." To like effect, are *Lawrence* v. *Allen,* 7 How., 794, 12 L. Ed., 914; *Rex* v. *Wheeler,* 2 Barn. & Ald., 349; *Murphy* v. *Arnson,* 96 U. S., 134, 24 L. Ed., 773; *Norris* v. *Com.,* 27 Pa., 496. I think, under no proper rule of construction, can a saw log be brought within these definitions. If it is an article manufactured from the produce of the State, then the owner of the trees who felled it and divided it into cuts of suitable lengths for the use of the sawyer is a "manufacturer," and yet who would so pervert the meaning of that term? Or who would say that the log as it lay

110 Tenn—13

upon the ground was a manufactured article? In what respect has it "acquired changed conditions, of new and specific combinations?" Its form has not been altered from what it was when it was a part of the tree. It has been simply dissevered from the trunk or stock of the tree, and is now prostrate, when, before the ax of the laborer was applied, forming a part of the stock or trunk, it stood upright. But it is said when it is delivered to the sawyer the first step is taken in the manufacturing process, and then, at least, it falls under the protection of this clause of the constitution. That would be so if the protection was given to the manufacturer and his property, as property. While the purpose of this provision is to encourage the conversion of home products into manufactured articles, yet this was not done by exempting either the manufacturer or his property, as such. It is "the article manufactured of the produce of this State," and not the materials from which the article is made, in their crude and unmodified form or condition, which this clause, by its terms, protects, "an article ready for convenient, immediate and general use." *Carpenter* v. *Brusle* (La.), 12 South., 483. It is suggested, however, in the opinion of the majority, as a reason for assigning a saw log to the category of manufactured articles, that in this way an indecent race of diligence between the tax gatherer and the manufacturer will be avoided, and that any other view will place the agent of the State on the alert to catch the material this side the finished product, and the manufacturer on

his guard, and to his utmost speed, in his efforts to reach a point where he will be free from taxation. I submit that this peril is imaginary rather than real. For it is to be observed that not only is the finished product—for instance, sideboard or table or window or door—exempt under this clause, but also and equally the finished materials or parts of these various articles which the maufacturer has on hand on the 10th of January, and which simply need adjusting or putting together to complete his perfect work. For these materials or parts have, as the result of skill and labor, acquired changed conditions, and are ready for convenient and immediate use, and so answer, as would the article which they are intended to complete, the requirement of the clause in question. In *Correlo* v. *Lynch,* 65 Cal., 273, 3 Pac., 889, there was an effort made by a purchaser of firewood to be used by him in burning bricks in his kiln to hold the seller liable for loss incurred by reason of the unfitness of the wood for that purpose, under a section of the California Code which makes the manufacturer of an article "under an order for a particular purpose a warrantor," by the sale, "that it is reasonably fit for the purpose," but the court repudiated the claim upon the ground that firewood was not a manufactured article; and yet firewood is no cruder than saw logs, and it has approached nearer the purpose for which it was intended than the former. An article in the constitution of Louisiana exempts from taxation for a period of thirty years "the capital, ma-

chinery, and other property employed in the manufacture of furniture and other articles of wood." In *Martin* v. *City of New Orleans*, 38 La. Ann., 397, 58 Am. Rep., 194, it was held that the capital and machinery employed in the production of dressed lumber, tongued and grooved moldings, sashes, doors, etc., were exempt under this provision, because each of these articles was "manufactured by machinery and of lumber . . . complete in itself, and ready for immediate, convenient and general use." In *Carre* v. *City of New Orleans*, 41 La. Ann., 996, 6 South., 893, it was ruled that materials used in the construction of cabins and rough planks were not "articles of wood," so as to give the plant engaged in their manufacture the benefit of this exemption, because they were not complete, separate articles, intended for immediate and convenient use; and in *Carpenter* v. *Brusle,* supra, the same rule was applied to a manufactory of bridge timbers.    The authority of the California and Louisiana cases is against the view of the majority as to the exemption of saw logs under section 30 of article 2 of the constitution, and the logic as well as the exact holding of the cases from Louisiana would equally exclude rough lumber in the hands of the sawyer from the benefit of the exemption.    In my opinion, it requires a construction of very doubtful liberality of that clause to bring rough lumber within its meaning, as an "article manufactured of the produce of the State," but that it is straining it beyond all proper limits when it is made to embrace saw logs.    I therefore dissent from the view of the majority.