Darnell v. Memphis.

I. M. DARNELL & SON COMPANY *v.* CITY OF MEMPHIS
et al.

(*Jackson.*   April Term, 1906.)

.1. **TAXATION.** Property imported from other States into this State is subject to the tax laws of this State, and is not exempt as interstate commerce, when

Lumber logs imported from another State, and lying in the importer's millyard in this State awaiting manufacture into lumber or already manufactured into lumber and awaiting sale, have become commingled with and merged into the mass of general property of this State, and have become subject to the tax laws of this State, and are not protected from State taxation by the interstate commerce clause of the constitution of the United States.   (*Post, pp.* 426-430.)

Constitution of the United States cited and construed:   Art. 1, sec. 8.

Cases cited and approved:   Steel & Wire Co. v. Speed, 110 Tenn., 524-546; Woodruff v. Parham, 8 Wall., 123; Brown v. Houston, 114 U. S., 622; Emert v. Missouri, 156 U. S., 296; May v. New Orleans, 178 U. S., 496; Steel & Wire Co. v. Speed, 192 U. S., 500; Kehrer v. Stewart, 197 U. S., 60-65.

2. **SAME.** Same. State taxation of such property is not a denial of the equal protection of the laws.

Under our constitutional and statutory exemption from taxation of the direct product of the soil in the hands of the producer and his immediate vendee and of articles manufactured of the produce of this State, a tax on lumber logs imported from another State into this State by a domestic corporation, and lying in the importer's millyard awaiting manufacture into lumber, or already manufactured into lumber and awaiting sale, is not violative of the fourteenth amendment to the constitution of the United States, as a denial of the equal protection of the laws. (*Post, pp.* 426, 430-444.)

Darnell v. Memphis.

Acts cited and construed: 1903, ch. 258, secs. 1 and 2.

Constitution cited and construed: Art. 2, secs. 28, 29, and 30.

Constitution of the United States cited and construed: Art. 1, sec. 8; 14th am.

Cases cited and approved: State v. Crawford, 2 Head, 461; Naff v. Russell, 2 Cold., 36; Kurth v. State, 86 Tenn., 136; Benedict v. Davidson Co., 110 Tenn., 191; McCulloch v. Maryland, 4 Wheat., 316-428; Bond Case, 15 Wall., 300-319; Tiernan v. Rinker, 102 U. S., 123; Barbier v. Connolly, 113 U. S., 27-31; Walling v. Michigan, 116 U. S., 446; Railroad v. Pennsylvania, 134 U. S., 232; Express Co. v. Seibert, 143 U. S., 339; People ex rel., v. Roberts, 17 U. S., 658; Dewey v. Des Moines, 173 U. S., 193-198; Bridge Co. v. Illinois, 175 U. S., 626-633; Refining Co. v. Louisiana, 179 U. S., 89-94; Insurance Co. v. Connecticut, 185 U. S., 364; Kidd v. Alabama, 188 U. S., 730; Railroad v. Powers, 201 U. S. 543; Cox v. Texas, 202 U. S. 446.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. Heiskell, Chancellor.

C. H. Trimble, H. B. Anderson, and Metcalf, Minor & Metcalf, for Complainant.

Thos. H. Jackson, City Attorney, for Memphis.

Attorney-General Cates, for the State.*

Mr. Justice Shields delivered the opinion of the Court.

---

*The State was not a formal party to this case, but, because of the interest of the State in the result, the Attorney-General, by the direction of the court, filed a brief on the questions involved.— Reporter.

This suit was instituted to determine the validity of an assessment of certain personal property of complainant by the proper officials of defendant city of Memphis. No question is made upon the regularity of the assessment, but complainant, a Tennessee corporation, domiciled in Memphis and engaged in the business of manufacturing lumber and selling its manufactured product, after admitting liability for taxes upon part of its personal property, averred that it is the owner of certain other personal property upon which an assessment had been made which consists of "logs cut from the soil of States of the Union other than Tennessee, and in the hand of complainant as the first vendee awaiting manufacture into lumber, or lumber already manufactured by complainant from logs of the character first stated, and lying in complainant's millyard awaiting sale," and the validity of the assessment of this property complainant challenged upon the following grounds:

First. Said property is protected from taxation by the commerce clause of the federal constitution (article 1, section 8), giving to congress power to regulate commerce with foreign nations and among the several States, etc.

Second. That the assessment of a tax upon the property in question is a denial to complainant of the equal protection of the laws, and is therefore in contravention of the fourteenth amendment to the constitution of the United States.

The constitution of Tennessee (article 2) among other things provides:

"Sec. 28. All property, real, personal or mixed, shall be taxed, but the legislature may except such as may be held by the State, by counties, cities or towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars' worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer and his immediate vendee. All property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value, but the legislature shall have power to tax merchants, peddlers and privileges in such manner as they may from time to time direct. The portion of the merchant's capital used in the purchase of merchandise sold by him to non-residents and sent beyond the borders of the State shall not be taxed at a higher rate than the ad valorem tax on property. The legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed ad valorem. All male citizens of this State, over the age of twenty-one years, except such persons as may be exempt by law on account of age or other infirmity, shall be liable to poll tax of not

less than fifty cents nor more than one dollar per annum, nor shall any county or corporation levy poll taxes exceeding the amount levied by the State.

"Sec. 29.   The general assembly shall have power to authorize the several counties and incorporated towns of this State to impose taxes for county and municipal purposes, respectively, in such manner as shall be prescribed by law; all property shall be taxed according to its value upon the principles established in regard to State taxation.

"Sec. 30.   No article manufactured of the produce of this State shall be taxed otherwise than to pay inspection fees."

Section 30, above quoted, originated with the first constitution of this State, adopted on February 6, 1796, and hence formed a part of the fundamental law of the State when it was admitted by the act of congress approved June 1, 1796.

The act of the general assembly under which the tax in question was assessed is chapter 258, p. 632, of the Acts of 1903, which, in respect of the matters involved in this case, substantially reproduces under the mandate of the constitution the rules and principles of taxation in force in this State for nearly an hundred years.

Said act is entitled, "An act to provide more just and equitable laws for the assessment and collection of revenue for State, county and municipal purposes." etc., and provides:

Darnell v. Memphis.

"Sec. 1. That all property, real, personal and mixed, shall be assessed for taxation for State, county and municipal purposes, except such as is declared exempt in the next section.

"Sec. 2. That the property herein enumerated, and none other, shall be exempt from taxation: . . . Subsec. 5. All growing crops of whatever nature or kind, the direct product of the soil of this State in the hands of the producer and his immediate vendee, and manufactured articles from the produce of the State in the hands of the manufacturer."

The contention of the complainant, upon the facts stated, that the tax upon the property in question was a burden upon commerce between the States and a denial of the equal protection of the laws, was challenged by demurrer, which was overruled by the chancellor, and thereupon an appeal was prayed and granted to this court.

We are of the opinion that both contentions insisted upon by complainant are without merit and cannot be sustained.

1. Upon the averments of the bill it is manifest that, although the property sought to be taxed was purchased by complainant in and brought from another State, nevertheless it had become divested of any connection with commerce between the States and was at rest, commingled with and merged into the general mass of property of this State, awaiting sale to purchasers.

Although the origin of property may be in another

State, nevertheless, when it is brought into this State and here merged into the mass of general property, it at once becomes subject to the tax laws of this State. *American Steel & Wire Co.* v. *Speed,* 110 Tenn., 524-546, 75 S. W., 1037, 100 Am. St. Rep., 814.

This principle was recognized and the holding of this court affirmed by the supreme court of the United States '(*American Steel & Wire Co.* v. *Speed,* 192 U. S., 500, 24 Sup. Ct., 365, 48 L. Ed., 538), and is in harmony with other adjudications of that court (*Woodruff* v. *Parham,* 8 Wall. [U. S.], 123, 19 L. Ed., 382; *Brown* v. *Houston,* 114 U. S., 622, 5 Sup. Ct., 1901, 29 L. Ed., 257; *May* v. *New Orleans,* 178 U. S., 496, 20 Sup. Ct., 976, 44 L. Ed., 1165; *Emert* v. *Missouri,* 156 U. S., 296, 15 Sup. Ct., 367, 39 L. Ed., 430.)

In *Kehrer* v. *Stewart,* 197 U. S., 60-65, 25 Sup. Ct., 403, 49 L. Ed., 663, the supreme court of the United States, in substance, declared that it can make no difference whence the property came or to whom it should be ultimately sold, because upon its arrival in the State where it is offered for sale and intermingled with the general property of the State, it becomes and is a part of the taxable property of the State.

2. The contention of the complainant that the assessment and taxation of the property in question denies to him the equal protection of the laws is based upon. its construction of the holding of this court in the case of *Benedict* v. *Davidson County,* 110 Tenn., 191, 67 S. W., 806, that under section 30 of article 2 of the constitution

of the State of Tennessee, all logs when cut from Tennessee soil and lumber made therefrom are exempt in the hands of the manufacturer owning the same, and that therefore the State of Tennessee, by exempting such property from taxation, has precluded itself from taxing logs taken from the soil of other States, or lumber manufactured therefrom, for the reason that, as stated in its brief, a State may not "under the federal constitution discriminate in favor of the products of its own soil or in favor of its own citizens, as against the products of the soil of other States, or against citizens of other States."

It is among other things insisted on behalf of appellant city of Memphis:

That the contention of complainant is not aided by the decision in *Benedict* v. *Davidson County*, supra, when considered in connection with and construed in the light of the repeated adjudications of this court to the effect that the exemption obtained only in favor of products of this State, manufactured in it, and while in the hands of the manufacturer (*State* v. *Crawford,* 2 Head, 461; *Naff* v. *Russell,* 2 Cold., 36; *Kurth* v. *State,* 86 Tenn., 136, 5. S. W., 593), which were not intended to be either overruled or weakened by the decision in *Benedict* v. *Davidson County.* But we do do not deem it necessary, at this time, to determine the scope or effect of the case of *Benedict* v. *Davidson County,* and proceed to examine the graver question whether, conceding the construction insisted upon by complainant, the people

of the State of Tennessee were without power to ordain and provide for the exemption, under certain conditions, of property within its borders from taxation.

In this connection it must be borne in mind that this record does not present a question of discrimination between citizens of different States. Complainant is a corporation brought into life and having its existence solely under and by virtue of the laws of this State, and, pretermitting the question of interstate commerce, its contention, when analyzed, is not that the State is without power to subject all property within her borders to taxation for public purposes, but that its property, purchased in another State and brought here and merged into and become a part of the general mass of property in this State, should not be taxed because the organic law of the State exempts articles manufactured from the produce of the State.

To arrive at a correct solution of this question, it is proper to consider what rights a sovereign State has in respect to taxation, and whether, or to what extent, such rights were abridged by the fourteenth amendment to the constitution of the United States.

The power of taxation is an incident to sovereignty, and, as said by Chief Justice Marshall, in the case of *McCulloch* v. *Maryland*, 4 Wheat. (U. S.), 316-428, 4 L. Ed., 579:

"The power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which

Darnell v. Memphis.

it is applicable, to the utmost extent to which the government shall choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation. The people of a State thereby give to their government a right of taxing themselves and their property, and, as the exigencies of government cannot be limited they prescribe no limits to the exercise of this right, resting confidently upon the interests of the legislator and upon the influence of the constituents over their representatives to guard them against this abuse."

Or, as said by Judge Cooley:

"The power to impose taxes is one so unlimited in force and so searching in extent that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of such authority as exercises it. It reaches to every trade and occupation, to every object of industry, use, or enjoyment, to every species of possession, and it imposes a burden which, in case of failure to discharge it, may be followed by seizure or sale, or confiscation, of property. No attribute of sovereignty is more pervading, and at no point does the power of the government affect more constantly and intimately all the relations of life than through the exactions made under it." Cooley's Constitutional Limitations, 678.

116 Tenn.—28

As was said by Mr. Justice Field, in "State Tax on Foreign Held Bonds," 15 Wall., 300-319, 21 L. Ed., 179:

"It may touch property in every shape—in its natural condition, in its manufactured form and in its varying transmutations. . . . It may touch business in the almost infinite forms in which it is conducted—in professions, in commerce, in manufactures, in transportation. Unless restrained by provisions of the federal constitution, the power of the State as to the mode, form, and extent of taxation is unlimited."

Such was the power inherent in the sovereign people of Tennessee when they met in convention in 1796 and framed a constitution for their government and for the protection of all persons and property within her borders.

In this constitution it was ordained that articles manufactured from the produce of the State should be exempt from taxation. This was the constitution presented to the federal congress when Tennessee was admitted into the union. It has been the law of the land, governing all people and controlling all property within her borders, for more than a century.

Without question, this wise provision, placed by the people of the State in the fundamental law of the land, has been enforced for the general good, the protection of her own property, and the upbuilding of manufacturing industries within her borders.

But now it is insisted that under the fourteenth amendment to the federal constitution this salutary

provision may not be enforced without denying to a citizen of the State, who is a general manufacturer of and dealer in the products of this and other States, the equal protection of the law.

There is no inhibition upon complainant, or any other citizen of the State, from dealing in the products of this State, or manufacturing articles from the produce of the State. The law is general in its operation. We are unable to see wherein, by virtue of the fourteenth amendment to the federal constitution, complainant is denied the equal protection of the law. It is not written into said amendment that the States may not classify property or accord different treatment to different classes of property. There is nothing in the amendment requiring taxes to be equal and uniform (*Travelers' Ins. Co. v. Connecticut,* 185 U. S., 364, 22 Sup. Ct., 673, 46 L. Ed., 949), and it has been uniformly held that a State may classify the objects of legislation so long as its attempted classification is not clearly arbitrary and unreasonable.

Taking into consideration the purpose and object of the fourteenth amendment, and the construction placed thereon by the supreme court of the United States, the ultimate arbiter of the meaning, scope, and effect of said amendment, we are of the opinion that the general powers of taxation, inherent in every government and vested in this State, were neither impaired nor narrowed by said amendment.

In the case of *Barbier* v. *Connolly,* 113 U. S., 27-31,

5 Sup. Ct., 357, 28 L. Ed., 923, Mr Justice Field, in discussing the general purposes and scope of the fourteenth amendment, among other things said:

"The fourteenth amendment, in declaring that no State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, undoubtedly intended, not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the employment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and their property, the prevention and redress of wrongs, and enforcement of contracts; that no impediment should be imposed to the pursuits of any one, except as applied to the same pursuits by another in like circumstances; that no greater burdens should be laid upon the same calling and condition; and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as ascribed to all for like offenses.

"But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes called the 'police power,' to prescribe regulations to pro-

Darnell v. Memphis.

mote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its health and prosperity."

And, in response to the insistence that certain corporations in the State of Pennsylvania were being unlawfully discriminated against by the assessment of a tax of three mills upon the nominal or face value of their bonds, while other property was assessed at its actual value, Mr. Justice Bradley said:

"The provision in the fourteenth amendment that no State shall deny to any person within its jurisdiction equal protection of the laws was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. We think we are safe in saying that the fourteenth amendment was not intended to compel the States to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all these constitutional provisions and laws of some of the States whose object is to secure equality of taxation and which are usually deemed material, but it would render nugatory those discriminations which the best interests of society require, which are necessary for the encouragement of needful and useful industries and the discouragement of intemperance and vice, which every State, in one form or another, deems it expedient to adopt." *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S., 232, 10 Sup. Ct., 533, 33 L. Ed., 892.

Upon this general question, our attention has been called to the opinion of the supreme court of the United States, recently delivered in the case of *Michigan Central R. Co.* v. *Powers,* 201 U. S., 543, 26 Sup. Ct., 459, 50 L. Ed., —, wherein Mr. Justice Brewer, reaffirming the general principle hereinbefore enunciated, said:

"We have had frequent occasion to consider questions of State taxation in the light of the federal constitution, and the scope and limits of national interference are well settled. There is no general supervision on the part of the nation over State taxation, and in respect to the latter the State has, speaking generally, the freedom of a sovereign, both as to objects and methods."

In harmony with these principles, the supreme court of the United States has repeatedly recognized the power of the State, expressed either in its organic law or legislative enactments, to foster industries by providing exemptions from taxation, both to persons and certain classes of property within its borders. The exemption laws of the several States, which operate only in favor of citizens of any property in the State, when assailed, have invariably been sustained, and are not longer questioned.

We will refer to a few of these. In *American Sugar Refining Co.* v. *Louisiana,* 179 U. S., 89-94, 21 Sup. Ct., 43, 45 L. Ed., 102 (approved in *Kidd* v. *Alabama,* 188 U. S., 730, 23 Sup. Ct., 401, 47 L. Ed., 669), the supreme court of the United States held that a manufacturer engaged in the business of refining sugar is not denied the

Darnell v. Memphis.

equal protection of the laws because of the discrimination made in the constitution of Louisiana, imposing a license tax upon manufacturers engaged in said business, but exempting from the tax those who refined the products of their own plantations.

In this case Mr. Justice Brown said:

"The power of taxation under this provision was fully considered in *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S., 232, 10 Sup. Ct., 533, 33 L. Ed., 892, in which it was said not to have been intended to prevent a State from changing its system of taxation in all proper and reasonable ways. It may, if it choose, exempt certain classes of property altogether, it may impose different specific taxes upon different trades or professions, may vary the rates of excise upon various products, may tax real and personal estate in a different manner, may tax visible property and not securities, and may allow or not allow deductions for indebtedness. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State legislature or the people of the State in framing their constitution."

And further said Mr. Justice Brown: "The constitution of Louisiana classifies the refiners of sugar for the purpose of taxation into those who refine the products of their own plantations and those who engage in a general refining business, imposing a tax only upon the latter class. To entitle a party to the exemption it must appear (1) that he is a farmer or planter; (2) that he

grinds all cane, as well as refines the sugar and molasses; (3) that he refines his own sugar and molasses, meaning thereby the product of his own plantation. Whether he may also refine the sugar of others may be open to question, although by its express terms the act does not apply to planters who refine syrup for other planters. The discrimination is obviously an encouragement to agriculture and does not deny to persons and corporations who are in a general refining business. the equal protection of the laws."

In *Pacific Express Co.* v. *Seibert,* 143 U. S., 339, 12 Sup. Ct., 250, 35 L. Ed., 1035, the supreme court of the United States held that a State statute, defining an express company to be such as carried on the business of transportation on trucks for hire with railroad or steamboat companies, did not discriminate against the express companies defined by it by exempting other companies carrying express matter in vehicles of their own.

In the case of *People, ex rel. Park Davis & Co.,* v. *Roberts,* 171 U. S., 658, 19 Sup. Ct., 58, 43 L. Ed., 323, the right of the State to classify the objects of taxation and to make reasonable discriminations in favor of domestic property and manufacturers was sustained, and it was held that the equal protection of the laws is not denied to a foreign corporation which manufactures goods in other States and sends them into the State for sale by a tax on the amount of capital employed by it within the State, because of an exemption of corporations which are wholly engaged in manufacturing within

the State, when the State makes no discrimination between foreign and domestic corporations.

The last decision of the supreme court of the United States, to which we have had access, is that of *Cox and Others* v. *Texas,* 202 U. S., 446, 26 Sup. Ct., 671, 50 L. Ed., 1099, decided on May 21, 1906, and in which the opinion was delivered by Mr. Justice Holmes.

In that case it was contended by Cox, a liquor dealer, that he was denied the equal protection of the law and unreasonably discriminated against in the matter of a license tax which was imposed upon him, a general dealer in liquors, when no such tax was imposed upon or applicable to wines produced from grapes grown in the State.

In delivering the opinion of the court, Mr. Justice Holmes, among other things, said:

"It is true that there is granted to the producers and manufacturers of wine from grapes grown in Texas an immunity not received and which is not granted to other sellers of the same wine. To that extent, but to that extent alone, favor is shown to a class. But it is not the class discrimination put forward and insisted upon. The attack is not mainly on the distinction between producers and other sellers of domestic wine, but upon that between those producers and the sellers of other wine. The latter, as we have said, is not a true class distinction. Whether there is a difference in the scope of a State's general power to legislate and its power to tax or not, the former does not need any extended defense, as

far as the fourteenth amendment alone is concerned [citing authorities]. . . . The truth is that the fourteenth amendment does not touch the case standing alone, and, if so, other provisions of the constitution which were not invoked cannot be brought in now under cover of the reference to the fourteenth amendment to give the latter a more extensive application to the case than it would have when taken by itself. If the States were restricted by the fourteenth amendment only, and saw fit to encourage domestic protection, or thought to promote temperance, or to help secure better wine by statutes such as those before us, there would be nothing to hinder them. If the statutes are open to objection as improperly interfering with commerce between the States (*Tiernan* v. *Rinker,* 102 U. S., 123, 26 L. Ed., 103; *Walling* v. *Michigan,* 116 U. S., 446, 6 Sup. Ct., 454, 29 L. Ed., 691), the right which comes from section 6 of article 1 of the constitution cannot be used to enlarge, for the purpose of this case, the privileges and immunities of an equal protection of the laws secured by the fourteenth amendment. *Dewey* v. *Des Moines,* 173 U. S., 193-198, 19 Sup. Ct., 379, 43 L. Ed., 665. The converse of a right set up under article 1, section 8, and an attempt to support it by the fourteenth amendment, was decided in *Keokuk & Hamilton Bridge Co.* v. *Illinois,* 175 U. S., 626-633, 20 Sup. Ct., 205, 44 L. Ed., 299."

The distinction between the effect of the interstate commerce clause of the federal constitution and the scope and operation of the fourteenth amendment is here

sharply drawn and soundly stated. All the cases relied upon to sustain the contention of complainant are predicated upon the commerce clause, and not the fourteenth amendment, to the federal constitution.

This is clearly recognized by Mr. Justice Holmes in *Cox et al.* v. *Texas,* supra, in his reference to the cases of *Tiernan* v. *Rinker* and *Walling* v. *Michigan,* and we are of the opinion that the supreme court of the United States, in using the language hereinbefore referred to, to the effect that the power of the State as to the mode, form, and extent of objects of taxation is unlimited, except as restrained by the provisions of the federal constitution, referred to inhibitions upon the taxing powers of the State by other clauses of the federal constitution, such as duties on imports and exports, taxes on government bonds and other securities, and not to any inhibition born of the fourteenth amendment. Does it not follow that where the people, in their organic law, have prescribed rules for levying taxes and designated the objects which shall be subject to or exempt from taxation, that, so long as the mandate of this supreme law of the State is observed, there can be no denial of the equal protection of the law, unless the law so invoked is one emanating from another sovereignty, one paramount to the State, to which the people of the State have delegated or upon which they have conferred supreme power in respect of the subject-matter of the particular thing in question? Therefore, conceding that the State may not burden or in any way interfere with transactions or pro-

perty so long as they relate to or are the subjects of commerce between the States, nevertheless, when such transactions are divested of their interstate character and the property has ceased to be a part of commerce between the States, or to have any connection therewith, and has become merged into and a part of the general mass of property in the State, there can be no denial of the equal protection of the supreme law, prohibiting interference with or the placing of burdens upon commerce between the States, for the reason that the federal constitution no longer operates upon such transactions or protects such property from the taxing power of the State.

From these conclusions it results that the decree of the chancellor, granting the complainant relief, must be reversed, the demurrer of the defendants sustained, and the bill dismissed, with costs.