TENNESSEE PRODUCTS & CHEMICAL CORPORATION *v.*
TAYLOR *et al.*

(*Nashville,* December term, 1949.)

Opinion filed March 17, 1950.

FRANK G. CLEMENT and ERNEST M. HAWKINS, JR., of
Nashville, for appellants.

ARMISTEAD, WALLER, DAVIS & LANSDEN, of Nashville, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Tennessee Products and Chemical Corporation, hereinafter referred to as Corporation, filed their bill against the Railroad and Public Utilities Commission of the State of Tennessee, hereinafter referred to as Commission, for taxes which they claim they were required to pay unlawfully. The Commission demurred to the bill. This demurrer was overruled and the Commission allowed a discretionary appeal.

The Commission, acting under Section 1508 through 1540 of the Code, assessed 12 tank cars belonging to the Corporation for *ad valorem* taxes. After the assessment had been made the Corporation appealed to the Board of

132

Equalization who substantially reduced the assessment. The tax was then fixed and paid by the Corporation under protest. This was for the year 1947.

The Corporation alleged in its bill that the tank cars, assessed for *ad valorem* taxes, were expressly exempt by the Statute involved, in that Section 1508 of the Code, as amended, provides, among other things, that: ". . . this statute shall not apply to corporations organized under the laws of Tennessee whose principal business is the manufacture of products of the soil of Tennessee and who for the transportation alone of such products furnish their own cars." A like exemption is repeated in Section 1513 of the Code.

The bill alleges that the Corporation owned 12 railroad tank cars all of which were used by the Corporation, a Tennessee corporation, in its principal business which was the manufacture of products of the soil of Tennessee, and that these cars were used for the "transportation alone of such products."

The Corporation sets out what it does at each of its plants and what it uses to manufacture the various articles that it manufactures at these plants. It alleged that "all the products manufactured by complainant are manufactured primarily from coal, hard wood or rock, which are products of the soil of Tennessee." It is alleged that approximately 75 per cent of all the coal used by the Corporation in the manufacture of its various products is mined in Tennessee and not more than 25 per cent of the coal so used is mined outside of the State.

The demurrer, and argument based thereon, is grounded on the proposition that the statutory term "the manufacture of products of the soil of Tennessee" refers only to agricultural products and that only man-

ufacturers whose entire business is the manufacture of such agricultural products should be entitled to the statutory exemption.

No cases have been found by able counsel for either party directly construing like language to that contained in the exemption quoted. Counsel though, does cite some two or three of our cases wherein this Court has construed related language from Sections 28 and 30 of Article 2 of the Constitution of this State. Both the Commission and the Corporation apparently rely on the same authorities.

In the earliest of these cases, *Benedict Bros.* v. *Davidson County,* 110 Tenn. 183, 187, 189, 67 S. W. 806, 807, this Court said: "We are of opinion that the term 'produce of the state' is intended to embrace whatever is produced or grown in the state, or is the yield of the state, whether it be crops or timber or coal or iron or marble or wood, or any other article which may be treated as produced or grown within the State from or on the soil, or may be found in the soil. It must be noted, however, that it is not the 'produce of the state' which is exempt under Section 30, but 'articles manufactured of such produce.' So that it becomes necessary to decide what is an article manufactured, within the sense of this provision. . . . Evidently the purpose of the exemption is to encourage manufacturing, . . ."

We think that the language used in the exemption statute above is broad enough to include all of those things enumerated above in the Benedict case which were applied to the term "produce of the state." If the legislature had intended to limit these things purely to the agricultural products, and cars used in the transportation of agricultural products, it would have been

a very simple matter to have inserted the word agricultural, therein. We cannot read that word, alone, into the statute.

Following the Benedict case, supra, this Court in *Darnell & Son Co.* v. *Memphis,* 116 Tenn. 424, 95 S. W. 816, and in *Neuhoff Packing Co.* v. *Sharpe,* 146 Tenn. 293, 240 S. W. 1101, 1103, has been consistent in holding that the Constitutional provisions referred to in the Benedict case were inserted in our Constitution for the purpose of encouraging the manufacturing of products of the State. The Court saying in the Neuhoff Packing Company case that: "The purpose of this provision of the Constitution was to encourage manufacture, and the framers of the Constitution were dealing with manufactured articles and providing for their exemption. They did not exempt the original products, and it was only after their form had been changed that they could be exempted."

This idea of encouraging the local manufacture of "products of the soil of this State" possibly was one of the reasons why the legislature inserted this exemption in the Statute.

 It seems to us, though, that there is a stronger reason for exempting these locally owned and locally used cars. Such cars do not present the same tax problem as is presented by other movable railroad property which does not have a permanent taxable situs wholly within the State. There was no particular necessity or advantage in taxing the property of the local manufacture on a mileage basis as there was in the case of Railroads and Private Car Companies (as the Pullman Company) engaged in the business of carriers or in leasing out railroad rolling stock to others.

By looking at this exemption it will be seen that there are two provisions in the exemption. The first is that "the principal business" is the manufacture of products of the soil of Tennessee. The second is that these cars then must be used "for the transportation alone of such products". The reading of this language shows that the meaning is that if the principal business is the manufacture of products of the soil of this State, that then these cars which are exempt from taxation are to be used only in transporting these products, that is, the products that are manufactured from the soil. Now it may be that a small percentage of the products do come from elsewhere, in one of these operations about 25 per cent of the coal came from without the State and in another one ton of Manganese ore (which was mixed with three tons of coke) came from without the State. These percentages coming from without the State make up a very limited or small percentage or portion of the manufactured products of this Corporation. The principal business of this Corporation is the manufacture of the products of the soil of this State. These cars are used for the "transportation alone" of such products either before or after their finished condition.

It therefore seems very clear to us that the purpose of the exemption in the Statute was to relieve the cars of the assessment for *ad valorem* tax as assessed by the Commission in the instant case. The result is that the decree of the Special Chancellor will be affirmed.

All concur.