# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 9, 2010 Session

## ALCOA, INC., v. TENNESSEE STATE BOARD OF EQUALIZATION, et al.

**Appeal from the Chancery Court for Blount County**
**No. 08-142      Hon. Telford E. Forgety, Chancellor**

---

**No. E2010-00001-COA-R3-CV - Filed February 18, 2011**

---

In this case the Blount County property assessor assessed ad valorem taxes against defendant for certain raw materials the defendant used to fabricate sheets of aluminum at its manufacturing facility in Blount County. The State Board of Equalization and the Chancery Court for Blount County upheld the assessment. Defendants have appealed to this Court arguing that Article II, Sections 28 and 30 of the Tennessee Constitution provide exemptions from ad valorem taxes for "the direct product of the soil in the hands of the producer, and his immediate vendee". We affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

Wayne R. Kramer and Jackson G. Kramer, Knoxville, Tennessee, for the appellant, Alcoa, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Gregory O. Nies, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee State Board of Equalization.

Robert N. Goddard and LaJuana G. Atkins, Maryville, Tennessee, and Doyle R. Monday, Brentwood, Tennessee, for the appellees, Mike Morton, Blount County Property Assessor, and Blount County, Tennessee.

## OPINION

### Background

Appellant, Alcoa, Inc., is a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania. Alcoa maintains offices and manufacturing operations in Blount County, Tennessee. The dispute in this case is whether Alcoa has met its burden of proving that it is entitled to an exemption from *ad valorem* taxes assessed by the Blount County Property Assessor on certain raw materials Alcoa used to fabricate sheets of aluminum at its Tennessee manufacturing facility. The assessment made by the Blount County Property Assessor was upheld by the Blount County Board, the State Board of Equalization and the Chancery Court for Blount County Tennessee. Alcoa has appealed and at the heart of its appeal are the provisions of Article II, Sections 28 and 30 of the Tennessee Constitution that provide exemptions from *ad valorem* tax for "the direct product of the soil in the hands of the producer, and his immediate vendee" and the "manufactured produce of this State . . . in the hands of the manufacturer." The relevant language of these constitutional provisions is as follows:

Article II, Section 28:

. . . [A]ll property real, personal or mixed shall be subject to taxation, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, **and shall except the direct product of the soil in the hands of the producer, and his immediate vendee** . . . . (emphasis added).

Article II, Section 30:

No article, manufactured of the produce of this State shall be taxed otherwise than to pay inspection fees.

Also applicable to this appeal is Tenn. Code Ann. § 67-5-216. This provision states

as follows:

(a) All growing crops of whatever kind, including, but not limited to, timber, nursery stock, shrubs, flowers, and ornamental trees, **the direct product of the soil of this state or any other state of the union, in the hands of the producer or the**

-2-

**producer's immediate vendee, and articles manufactured from the produce of this state, or any other state of the union, in the hands of the manufacturer, shall be exempt from taxation**. (emphasis added).

The Final Decision and Order of the Board's Assessment Appeals Commission provides the background information regarding the tax assessments in question as follows:

> The subject commercial and industrial tangible personal property is located in the taxpayer's manufacturing plants in Alcoa, Tennessee. Alcoa, like other businesses, is required by applicable property tax statutes to list its tangible personal property on a schedule to be filed with the county assessor of property by March 1.
> . . .
>
> Alcoa was audited for tax years 2001 and 2002 and back assessed for omitted raw materials (mostly alumina) for tax years 2001 and 2002. The company omitted the alumina and related materials in the belief this property constituted products of the soil exempt under the Tennessee Constitution.

Alcoa was also assessed for the omitted raw materials for the tax year 2003, and it timely filed appeals with the Board for the years 2001, 2002 and 2003. A hearing was held in January 2006 and the Administrative Law Judge (ALJ) issued an Initial Decision and Order finding that the raw materials at issue were subject to assessment as personal property and that the exemption sought by Alcoa under Article II, Section 28 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216 did not apply because the raw materials were imported from foreign countries. The holding was affirmed by the Board's Assessment Appeals Commission (AAC) by its Order of June 4, 2008. The ruling was adopted by the Board and a Certificate of Assessment was issued on July 24, 2008. Neither the ALJ nor the AAC actually ruled that the raw materials were or were not "direct products of the soil". Alcoa filed a Petition for Judicial Review on September 19, 2008 with the Chancery Court for Blount County, Tennessee pursuant to Tenn. Code Ann. §§ 4-5-322(b)(1)(A) and 67-5-1511.

**The Chancery Court Trial**

The Chancery Court conducted a hearing on the Petition for Judicial review on October 8, 2009, and the Chancellor issued a Memorandum Opinion and Order on December 9, 2009 ruling in favor of the Board and the County. The Chancellor first set forth the applicable legal principles in the Memorandum:

> In construing statutes, court must first determine the legislature's purpose and

intent, and then give full effect to that intent and purpose. *Waldschmidt v. Reassure American Life Ins. Co.,* 271 S. W. 3d 173, 176 (Tenn. 20008). In doing so, the court must (1) give words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended that each word be given full effect. *Id*.

In general, taxing statutes are construed liberally in favor of the taxpayer and strictly against the taxing authority. *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132, 135 (Tenn. 1992). On the other hand, exemptions from taxation are construed strictly against the taxpayer who bears the burden of showing that he is entitled to exemption. *Id*.

The Court went on to address the fact that Alcoa had raised certain constitutional questions regarding the taxing statutes at issue:

The courts must not decided constitutional questions unless such questions are absolutely necessary for the disposition of the case, and the determinations of the parties' rights. *DeLaney v. Thompson*, 982 S.W.2d 857, 858 (Tenn. 1998), *reh'g denied*. Moreover, if a case can be decided upon non-constitutional grounds, the courts must avoid decisions on constitutional questions. *State v. Thompson*, 151 S. W. 3d 434, 442 (Tenn. 2004).

Based on these stated legal principles and the facts presented, the Chancellor ruled that "the raw materials at issue were properly assessed and taxed by Blount County." Specifically, the Trial Court found that all the raw materials had gone through an "extensive man-initiated and controlled refinement process" and therefore were not "direct products of the soil" within the meaning of Article II, section 28 of the Tennessee Constitution or Tenn. Code Ann. §§ 67-5-216 and 67-5-502. In so finding, the Trial Court relied on two Tennessee Supreme Court decisions, *Benedict v. Davidson County*, 110 Tenn. 183, 67 S.W. 806 (1902) and *Nashville Tobacco Works v. City of Nashville*, 149 Tenn. 551, 260 S.W. 449 (1924). Although the Trial Court stated that this ruling was dispositive of the issue and that it was not necessary to analyze the "products of the soil" exemption further, the Trial Court went on to state that Alcoa also failed to qualify for the exemption under Article II, section 28 of the Tennessee Constitution or Tenn. Code Ann. § 67-5-216 because the raw materials were not "in the hands of the producer or immediate vendee".[1] The Trial Court further stated that because of its ruling that the raw materials were not "direct products of the soil" it was unnecessary to address whether Tenn. Code Ann. § 67-5-216 was unconstitutional because

---

[1] The trial court noted the alumina produced from March 1, 2001 to March 31, 2003 would qualify as being in the hands of the producer or immediate vendee.

it unlawfully discriminated against products of the soil of foreign (non-United States) nations.

The Trial Court also held that Alcoa was not entitled to a tax exemption on the raw materials at issue as they were not "products manufactured of the produce of this state" under Article II, Section 30 of the Tennessee Constitution. The Court, relying on *Morgan & Hamilton Co. v. City of Nashville*, 151 Tenn. 382, 270 S.W. 75 (1925), stated that the raw materials "have certainly not been shown to be articles manufactured by Alcoa itself." [2] The Trial Court went on to state that in view of this ruling, it was unnecessary to address the constitutional question, raised by Alcoa, that Article II, Section 30 of the Tennessee Constitution and the controlling Tennessee tax statutes unlawfully discriminated against articles manufactured from the produce of foreign nations.

Alcoa timely filed a Notice of Appeal of the Chancellor's Order.

Alcoa presents these issues on appeal:

A.    Was the Trial Court correct when it ruled that the alumina, coke, pitch and fluoride used by Alcoa at the Tennessee operation are not, as a matter of law, "direct products of the soil" under Article II, Section 28 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216?

B.    Was the Chancellor correct in ruling that throughout some or all of the Audit Period, Alcoa was neither the "producer" nor "immediate vendee" of the alumina, coke, pitch and fluoride under Article II, Section 28 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216?

C.    Did the Trial Court err in failing to rule that the alumina, coke, pitch and fluoride were improperly assessed despite, and contrary to the provisions of Article II, Section 28 of the Tennessee Constitution, Rule 0600-5-.04 of the Rules of the Tennessee State Board of Equalization, and Article I, Section 10, Clause 2, and Article I, Section 8, Clause 3 of the United States Constitution and either Tenn. Code Ann. § 67-5-216 or § 67-5-502?

---

[2] The trial court stated that while two of the raw materials at issue, alumina and fluoride, could be viewed as having been manufactured by an Alcoa subsidiary, the court would not ignore the separate existence of the parent and subsidiary for purposes of finding an exemption based on the principle that "the Court must construe a tax exemption strictly against the taxpayer, and resolve any doubts in favor of the taxing authority."

D.	Did the Trial Court err (i) in ruling that the alumina, coke, pitch and fluoride used by Alcoa at the Tennessee operation, and any scrap metal, pot lining and allying metals also used by Alcoa at its Tennessee Operation, are not "manufactured articles" and (ii) in failing to rule that such items were improperly assessed under Article II, Section 30 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216?

Alcoa maintains the Trial Court was in error when it ruled that the alumina, coke, pitch and fluoride used by Alcoa at the Tennessee operation are not, as a matter of law, "direct products of the soil" under Article II, Section 28 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216? Article II, Section 28 in its pertinent part provides as follows:

. . . [A]ll property real, personal or mixed shall be subject to taxation, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, **and shall except the direct product of the soil in the hands of the producer, and his immediate vendee** . . . . (emphasis added).

Tenn. Code Ann. § 67-5-216 states:

(a) All growing crops of whatever kind, including, but not limited to, timber, nursery stock, shrubs, flowers, and ornamental trees, **the direct product of the soil of this state or any other state of the union, in the hands of the producer or the producer's immediate vendee, and articles manufactured from the produce of this state, or any other state of the union, in the hands of the manufacturer, shall be exempt from taxation**. (emphasis added).

We must determine the meaning of "direct product of the soil" as used in the Tennessee Constitution and Tenn. Code Ann. § 67-5-216. When interpreting a statute, our primary purpose is to ascertain and give effect to the intention of the legislature. *State, ex rel. Davis v. A & F Const.,* M2008-00360-COA-R3-CV, 2009 WL 499421 at * 3 (Tenn. Ct. App. Feb. 26, 2009), appeal denied (Sept. 28, 2009)(citing *Lipscomb v. Doe,* 32 S.W.3d 840, 844 (Tenn. 2000)). Legislative intent is ascertained, whenever possible, from the natural and ordinary meaning of the language used, without forced or subtle construction that would limit or extend the meaning of the language. *A & F Const* at *3 (citing *Hawks v. City of Westmoreland,* 960 S.W.2d 10, 16 (Tenn.1997)). Furthermore, statutory language must be read in the context of the entire statutory scheme. *A & F Const* at * 3 (citing *National Gas Distribs., Inc. v. State,* 804 S.W.2d 66, 67 (Tenn.1991)).

When construing statutes that levy taxes or duties on citizens, courts are not to extend by the application of the statute beyond the clear import of the language used, nor will the statute's operation be enlarged so as to embrace matters not specifically named or pointed out. *Union Carbide Corp. v. Alexander*, 679 S.W.2d 938, 942 (Tenn. 1984) (citing *Chero-Cola Bottling Co. v. McDaniel,* 145 Tenn. 615, 237 S.W. 1101 (1921); *H.D. Watts Co. v. Hauk,* 144 Tenn. 215, 231 S.W. 903 (1923); *Chattanooga Plow Co. v. Hays,* 125 Tenn. 148, 140 S.W. 1068 (1911)). Doubts as to the application of a tax statute will be resolved in favor of the citizen and tax statutes will be construed most strongly against the state. *Id.* (citing H.D. *Watts Co. v. Hauk, supra; State v. Louisville & Nashville R. Co.,* 139 Tenn. 406, 201 S.W. 738 (1918)); *Covington Pike Toyota, Inc. v. Cardwell*, 829 S.W.2d 132, 135 (Tenn. 1992)). Conversely, tax exemptions are construed against the taxpayer, who bears the burden of proving entitlement to the exemption. *Hyatt v. Taylor,* 788 S.W.2d 554, 556 (Tenn.1990); *Cordis Corp. v. Taylor,* 762 S.W.2d 138, 139 (Tenn.1988).

In this case, Alcoa, the tax payer, is seeking to avoid paying *ad valorem* taxes on the raw materials pursuant to the tax exemptions contained in Article II, Sections 28 and 30 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216. Alcoa bears the burden of proving it is entitled to the exemptions and any doubts regarding the applicability of the exemptions to the raw materials at issue must be construed in favor of the taxing entities and against Alcoa.

Alcoa maintains that the Trial Court erred as a matter of law when it held that the raw materials at issue, alumina, coke, pitch and fluoride, were not "direct products of the soil" within the meaning of Article II, Sections 28 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216 because the raw materials were "created by man after some substantial process of refinement" and otherwise went "through a more extensive man-initiated and controlled refinement process" than is permitted under the law to still qualify as a direct product of the soil. In so holding, the Trial Court relied on the Tennessee Supreme Court decisions *Benedict Bros. v. Davidson County*, 110 Tenn. 183, 67 S.W. 806 (Tenn. 1902) and *Nashville Tobacco Works v. City of Nashville*, 149 Tenn. 551, 260 S.W. 449 (Tenn. 1924). The Trial Court, referring to these cases, stated that "it appears then that the Supreme Court has twice said that direct products of the soil, such as wheat or tobacco, are not entitled to the Article II, Section 28 exemption once they have been altered by some human initiated and controlled process, *viz.* grinding in the case of wheat and flour, and conversion in the case of tobacco (from leaf tobacco to chewing tobacco, smoking tobacco, etc.)." The Supreme Court in *Benedict Bros.*, discussing the application of Article II, Sections 28 and 30 of the Tennessee Constitution, held:

> Wheat is a direct product of the soil, but it is not an article manufactured of the produce of the state. Flour made of wheat grown upon Tennessee soil is an article

manufactured of the produce of the state, but it is not a direct product of the soil though manufactured out of the direct product of the soil. Wheat grown on Tennessee soil is exempt, under the provision of section 28, supra, while flour manufactured of such wheat is not, but is exempt only under section 30.

*Benedict Bros* at 807.

Likewise, the Supreme Court contemplated the meaning of "direct product of the soil" as used in Article II, Section 28 of the Tennessee Constitution in *Nashville Tobacco* and held:

Tobacco like wheat is exempt from taxation [] in the hands of the producer and the immediate vendee of the producer under section 28, supra. Converted into chewing tobacco, smoking tobacco, or snuff, the converted leaf, like wheat ground into flour, is exempt from taxation under section 30, supra. But wheat stored in bins or elevators and leaf tobacco in bulk or in hogsheads or hanging in sheds, after it has passed from the hands of the producer or his immediate vendee, is not exempt under either of the foregoing sections. *Benedict v. Davidson County*, 110 Tenn. 187, 67 S. W. 806.

\* \* \* \*

Section 28 of article 2 of the Constitution contemplates products of the soil as the thing produced and sold after the planting, cultivation, and harvesting, and leaf tobacco as the result of husbandry remains a product of the soil within the meaning of this provision until it has been taken by the artisan and converted into plug tobacco, twist tobacco, or smoking tobacco, or snuff.

*Nashville Tobacco* at 450 - 451.

In addition to relying on the reasoning of *Benedict* and *Nashville Tobacco*, the Trial Court examined the plain language of the applicable section of the Constitution and statute:

The Court is bolstered in its conclusion by the plain language of the Constitution and Statutes. The only things entitled to the exemption are *direct* products of the soil. The Court must construe the provisions at issue so that its words will be given full effect. *Waldschmidt* [*v. Reassurance Life Ins. Co.*], 271 S.W. [3d. 173], 176 [(Tenn. 2008)]. While there has apparently not been a comprehensive definition of this term yet rendered, it seems logical that the exemption was intended to apply only to things that came directly, without substantial alteration by man, from the soil - such as wheat or tobacco. *Black's Law Dictionary* (8th ed. 2004) defines "direct" as "1. (Of a thing)

-8-

straight; undeviating ‹a direct line›. 2. (Of a thing or person) straightforward ‹ a direct manner › ‹ direct instructions›. 3. Free from extraneous influence; immediate ‹ direct injury›.

The Trial Court was not in error when it held that Alcoa's raw materials are not exempt from *ad valorem* taxes. Article II, Section 28 of the Tennessee Constitution provides the first exemption claimed by Alcoa as follows :

> . . . [A]ll property real, personal or mixed shall be subject to taxation, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, **and shall except the direct product of the soil in the hands of the producer, and his immediate vendee** . . . . (emphasis added).

Accordingly, by the plain language of the Constitution, to qualify for the exemption, the property at issue must be both: (1) the direct product of the soil; and (2) in the hands of the producer or his immediate vendee. If the first prong of the exemption, the direct product of the soil, is not met, there is no need to inquire whether the property is in the hands of the producer or his immediate vendee. Likewise, Tenn. Code Ann. § 67-5-216 also expressly provides the exact same exemption:

> (a) All growing crops of whatever kind, including, but not limited to, timber, nursery stock, shrubs, flowers, and ornamental trees, **the direct product of the soil of this state** or any other state of the union, **in the hands of the producer or the producer's immediate vendee,** and articles manufactured from the produce of this state, or any other state of the union, in the hands of the manufacturer, **shall be exempt from taxation**. (emphasis added).

The first question for this Court is whether the raw materials Alcoa seeks to have exempted from *ad valorem* taxes are "direct products of the soil". If no, it is not necessary to consider whether Alcoa is the producer or the immediate vendee of the producer. We are required, as a matter of proper statutory construction, to give words their ordinary and plain meaning. The dictionary definition for "direct" relied on by the Trial Court is: straight, undeviating, straightforward, free from extraneous influence, immediate. Thus, only the original, unprocessed products of the soil qualifies as a "direct" product of the soil. This interpretation of the constitutional and statutory provisions is bolstered by the pronouncements of the Tennessee Supreme Court in *Benedict Bros.,* and in *Nashville Tobacco Works*. Accordingly, the test we apply to the facts of the case is whether the raw materials at issue have been processed at least to the extent of the processing required to convert wheat into

flour or leaf tobacco into chewing or smoking tobacco.

The facts the parties stipulated to show that all of the raw materials Alcoa seeks an exemption for have been put through a process at least as extensive, and usually more extensive, than that of milling wheat into flour. Moreover, in the course of the transformation from the product of the soil to the raw material, each of the raw materials at issue changed names and appearances and consistency. Based on the facts presented regarding the processes that caused bauxite to become alumina, petroleum to become coke, coal to become pitch and fluorspar to become fluoride, the Trial Court did not err when it stated that all of the raw materials "have gone through a more extensive man-initiated and controlled refinement process than those involved in converting wheat to flour or leaf tobacco to smoking tobacco."[3] Accordingly, we affirm the Trial Court's holding that the raw materials were not products of the soil and, thus were not exemption from *ad valorem* taxation. Since we hold the raw materials are not products of the soil, it is unnecessary to determine whether Alcoa is the producer or the producer's direct vendee.

Alcoa contends that if the raw materials used by it at its Tennessee Operations are found to not be "products of the soil", then the raw materials plus any scrap metal, potlining and alloying metals also used at its Tennessee Operations are "manufactured articles" and were improperly assessed under Article II, Section 30 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216. Article II, Section 30 of the Tennessee Constitution states: "No article, manufactured of the produce of this State shall be taxed otherwise than to pay inspection fees" and the applicable part of Tenn. Code Ann. § 67-5-216 provides:

(a) All growing crops of whatever kind, including, but not limited to, timber, nursery stock, shrubs, flowers, and ornamental trees, the direct product of the soil of this state or any other state of the union, in the hands of the producer or the producer's immediate vendee, **and articles manufactured from the produce of this state, or any other state of the union, in the hands of the manufacturer, shall be exempt from taxation.** (emphasis added).

The Trial Court concluded that the raw materials, alumina, coke, pitch and fluoride as well as scrap metal, potlining and alloying metals were not entitled to exemption as articles manufactured from the products of this state or another state and in the hands of the manufacturer.

---

[3]The parties stipulated that the raw material alumina at issue in this case originates from bauxite. Bauxite is a mineral mined from the ground in various locations around the world. It is not mined in North America, and alumina must be extracted from bauxite.

The Trial Court relied on *Morgan & Hamilton Co. v. City of Nashville,* 151 Tenn. 382, 270 S.W. 75 (1925) where the Tennessee Supreme Court considered whether a manufacturer of cotton, burlap and paper bags was entitled to a tax exemption under Article II, Sections 28 and 30 of the Tennessee Constitution. The taxpayer in *Morgan* claimed an exemption under Section 30 for cotton, produced in Tennessee and Alabama, and jute imported from India. These products were to be used by the taxpayer for the manufacture of burlap bags. *Morgan* at 75 - 76. The Supreme Court held that until the taxpayer "converted" the jute and cotton into the product it manufactured, burlap bags, the "Constitution would afford no exemption from taxation . . . . The cotton and burlap in storage awaiting conversion is not exempt, because they were not the articles which the Complainant [taxpayer] manufactured." *Morgan* at 76-77. The *Morgan* court elaborated on this holding stating that the exemption under Section 30 is not available until "the artisan commences to produce an article different from the original product which he bought of the use in manufacturing. *Morgan* at 77.

Based on the holding in *Morgan*, the Trial Court stated that the coke, pitch, scrap metal, potlining and alloying metals had not been shown to be articles manufactured by Alcoa itself. The Trial Court rejected Alcoa's argument that the aluminum and fluoride manufactured by AWA, an Alcoa subsidiary, should be viewed as manufactured by Alcoa. The Trial Court stated that it "cannot for purposes of the exemption ignore the separate existence of the two entities" [Alcoa and AWA] citing *Nashville Tobacco Works*, 260 S.W. at 450 - 451.

We hold the Trial Court did not err on this issue.

The subject constitutional provision and statute do not provide a definition of manufacturer, however, the Tennessee Supreme Court has provided guidance in several cases: In *Chattanooga Plow Co. v. Hays*, 125 Tenn. 148, 140 S.W. 1068 (1911) the Court adopted the definition of manufacturer from *Anderson's Dictionary of Law; Webster* as "[a] manufacturer is one engaged in making materials, raw or partly finished, into wares suitable for use. *Id*. at 1069. Eleven years later the Court stated " . . . "the definition of a manufacturer contemplates the attainment of such object by adding to the value of the property after purchase, by some process or combination with other materials . . . . The material entering into the manufactured article may be modified, more or less, in its identity. *Neuhoff Packing Co. v. Sharpe*, 146 Tenn. 293, 240 S.W. 1101 (1922). Years later, the Court, in *Morgan & Hamilton Co.* 270 S.W. 75 (1925), noted that a product "is not exempt until it becomes an article of manufacture, which would date from the time the artisan commences to convert the product or commodity into an article which he manufactures; that is to say, when he commences to produce an article different from the original product which he bought for use in manufacturing. *Id*. at 76 - 77.

In this case, the parties stipulated that Alcoa is a manufacturer of aluminum and that it manufactures sheets of aluminum for beverage cans. The stipulated facts also make is clear that neither Alcoa nor any of its subsidiaries manufactured the coke, pitch scrap metal, potlining or alloying metals that Alcoa used to manufacture aluminum at its Tennessee Operation. We conclude the Trial Court did not err when it concluded that these items were not exempt from *ad valorem* under Article II, Section 30 of the Constitution or under Tenn. Code Ann. § 67-5-216. Moreover, the stipulated facts show that Alcoa itself had no hand in producing/refining the alumina from bauxite or the fluoride from flurospar. However, at least some of the alumina and fluoride that reached the Tennessee Operation during the subject time period were manufactured by AWA, a subsidiary of Alcoa.

Alcoa, on appeal, only addressed this issue in a footnote wherein it stated that "Alcoa's subsidiary AWA, should be ignored for purposes of determining whether Alcoa was the manufacturer of aluminum and fluoride. Alcoa's brief suggests that this Court should "pierce the corporate veil" and find that AWA is a mere instrumentality of Alcoa and that Alcoa is in fact the "manufacturer" of aluminum and fluoride and thus entitled to the exemption.

Alcoa acknowledges that AWA is a separate legal entity from Alcoa and also acknowledges that "the courts in Tennessee have held that a subsidiary corporation is a separate corporate entity for *ad valorem* property tax purposes." *Nashville Tobacco Works*, 260 S.W. 449, 450 (1924). However, Alcoa argues that at the time AWA produced/refined the aluminum from bauxite and fluoride from fluorspar, AWA was not "merely Alcoa's subsidiary" based on the stipulated facts regarding AWA's operations. The stipulation states that AWA had no employees, it had no payroll, all decisions regarding the manufacture of alumina were made by Alcoa employees who were paid by Alcoa and entitled to Alcoa benefits. Accordingly, Alcoa urges this Court to find that AWA was Alcoa's instrumentality as a matter of law. Alcoa's position is that for the Court to do otherwise would "result in a significance injustice" although Alcoa does not specify what the "significant injustice" would be. Further, Alcoa offers no explanation of why or for what benefit AWA was set up as a subsidiary of Alcoa, nor does the record shed any light on this issue.

The Tennessee Supreme Court has noted that" form and structure are quite significant in business and commercial transactions, and frequently the form or structure used has controlling significance for taxes and other purposes." *Standard Adver. Agency, Inc. v. Jackson*, 735 S.W.2d 441, 443 (Tenn. 1987). The Court went on to state:

> While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as

a separate legal person.

*Id.* (quoting *Schenley Distillers Corporation v. United States*, 326 U.S. 432, 437, 66 S.Ct. 247, 249, 90 L.Ed. 181, 184 (1946)). Further, in *Shelby County v. Barden*, 527 S.W.2d 124, 130 (Tenn. 1975), the Court addressed the necessity of honoring the corporate status selected by an entity when it stated "where parties have deliberately undertaken to do business in corporate form, for tax purposes, accounting and other reasons, they must be held to the corporate form and they cannot shunt aside at their convenience legal entities and the legal aspects thereof". Accordingly, the general policy of the courts of Tennessee has been to honor the corporate structure selected by an entity, however, the courts have under certain circumstances disregarded the selected corporate structure and "pierced the corporate veil".

The Tennessee Supreme Court, in *Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo*, 578 S.W.2d 625, 632 (Tenn. 1979), set forth the three elements that must be proven by a party seeking to "pierce the corporate veil":

(1) The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own.

(2) Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id.* at 632.

The proof here supports a finding that the first element is met, but there is absolutely no proof to support a finding that the second and third elements are present. There was no evidence showing that the control Alcoa had over its subsidiary, AWA, was used to commit fraud or a wrong or that such control caused injury or unjust loss to a third party. Accordingly, the Trial Court did not err when it refused to pierce the corporate veil and find that Alcoa was in fact the manufacturer of the aluminum and fluoride produced by AWA in its Texas operation.

In sum, the Trial Court's holding that the raw materials used by Alcoa at its Tennessee Operation were not "products of the soil" under Article II, Section 28 of the Tennessee

Constitution and Tenn. Code Ann. § 67-5-216 is affirmed. Likewise, the Trial Court's holding that the raw materials were not manufactured by Alcoa under Article II, Section 30 of the Tennessee Constitution and Tenn. Code Ann. § 67-5-216 is affirmed. Consequently, the Trial Court's upholding of the tax assessment by the Blount County Assessor was correct and is affirmed. The remaining constitutional issues raised on appeal by Alcoa will not be addressed by this Court as the appeal has been decided on other grounds. *See DeLaney v. Thompson*, 982 S.W.2d 857, 858 (Tenn. 1998)(Courts will rule on a constitutional question only when it is absolutely necessary for the determination of the case and of the rights of parties to the litigation)(citing *Glasgow v. Fox,* 214 Tenn. 656, 666-667, 383 S.W.2d 9, 13-14 (1964); *Jackson v. Davis,* 530 F.Supp. 2, 4 n. 1 (E.D.Tenn.)).

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal assessed to the appellant, Alcoa, Inc.


_____
HERSCHEL PICKENS FRANKS, P.J.