**CORDIS CORP., A Florida Corporation, Appellee,**

v.

**Dudley W. TAYLOR, Commissioner of Revenue, State of Tennessee, Appellant.**

Supreme Court of Tennessee, Middle Section, at Nashville.

Dec. 5, 1988.

W.J. Michael Cody, Atty Gen. and Reporter, William Sizer, Asst. Atty. Gen., Nashville, for appellant.

O'Hare, Sherrard and Roe, James T. O'Hare, Nashville, for appellee.

## OPINION

COOPER, Justice.

This is an appeal by the Commissioner of Revenue of the State of Tennessee from a decree of the Chancery Court of Davidson County, ordering a refund of sales taxes paid under protest.

The parties stipulated that Cordis sold implantable cardiac pacemakers and hydrocephalus valve systems in the State of Tennessee during the taxable years in question. Cordis did not collect or pay the Tennessee sales tax on the sales on the ground that the devices sold were exempt from sales tax under T.C.A. § 67–6–314(5), which exempts from tax the "sale of prosthetics, orthotics, special molded orthopedic

shoes, walkers, crutches, surgical supports of all kinds, and other similarly medical corrective or support appliances and devices." The Commissioner audited Cordis and assessed tax, penalty and interest in the total amount of $71,625.19. The assessment was paid by Cordis under protest. Subsequently, the Commissioner refunded $13,367.43, representing tax on sales to tax-exempt non-profit hospitals and a reduction of the penalty for a portion of the assessment. The taxpayer sued for the balance of the assessment paid.

The issue is whether implantable cardiac pacemakers and hydrocephalus valve systems are "prosthetics" within the meaning of the term as used in T.C.A. § 67–6–314(5). The chancellor concluded that they are and ordered a refund of taxes paid, together with interest and penalty. We concur in his holding.

The commissioner argues on appeal, as he did in the trial court, that to be exempt from sales tax under T.C.A. § 67–6–314(5), a device must substitute for a missing part of the body. The taxpayer insists that a device is a "prosthetic" if it substitutes for the missing function of a bodily part, whether the part is missing or whether for whatever reason the part is non-functioning or has reduced function.

Dr. George S. Allen, professor and chairman of the Department of Neurological surgery at Vanderbilt School of Medicine testified that hydrocephalus is a condition in which fluid in the brain, which ordinarily flows from the brain into the blood by means of a series of almost microscopic valves, is blocked. The condition is caused either by non-functioning valves or the failure of the fluid to reach functioning valves. The buildup of fluids puts pressure on the brain, which can cause serious brain damage and eventually death. The hydrocephalus valve system works by inserting a catheter into the brain. The fluid is enabled to circumvent the faulty valve system and is directed through the artificial valve system. The hydrocephalus valve system is surgically implanted and is permanent.

Dr. Allen medically opined that the hydrocephalus valve system was a prosthesis in that (1) it is an artificial part and (2) it is a device which augments the performance of a natural function, in this case, the natural flow of cerebral spinal fluid from the brain into the bloodstream. It does not physically replace a body part, although it functionally replaces it.

Dr. John Hammond, M.D., a board certified cardiac and thoracic surgeon, testified that a cardiac pacemaker is a battery powered device implanted in the body which regulates the beat of the heart with a steady flow of electrical impulses through insulated wires to an electrode which has been implanted in the heart. The pacemaker is necessary when the natural function of the sinoatrial or atrial ventricular nodes, which normally regulate heartbeat through impulses from the brain is missing or impaired. The pacemaker provides an artificial steady electric pulse which replaces or augments the missing or irregular natural pulse.

In addition to the testimony of Doctors Allen and Hammond, Cordis relies on a number of medical definitions of prosthesis. In Stedman's Medical Dictionary, "prosthesis" is defined as "A fabricated substitute for a diseased or missing part of the body, as a limb, tooth, eye or heart valve." In Tabor's Cyclopedic Medical Dictionary, "prosthesis" is defined as:

1. Replacement of a missing part by an artificial substitute, such as an artificial extremity. SEE: *Boston Arm.* 2. An artificial organ or part. 3. Device to augment performance of a natural function such as a hearing aid.

■ Under the facts, there is no question but that the hydrocephalus valve system and cardiac pacemaker are prostheses under the taxpayer's definition; they are not prostheses under the Commissioner's definition since the bodily parts whose function they replace or augment nevertheless remain.

■ The taxpayer bears the burden of proving entitlement to an exemption. *Shearin v. Woods,* 597 S.W.2d 895, 896 (Tenn.1980). Technical words in a statute are to be taken in their technical sense

unless it is clear from the context that another sense was intended. *Palmer v. State*, 47 Tenn. 82 (1869).

In our view, subsection (5) was intended to import generally accepted medical definitions of the terms therein. The expert medical testimony of the taxpayer as well as the definition in medical dictionaries support the taxpayer's interpretation of "prosthesis."

The Commissioner argues that the words in the statute are not used in a specialized sense, and thus relies on general dictionaries such as American Heritage or Webster's which in defining "prosthesis", refer to replacement of missing parts. We disagree that the legislature did not intend to import generally accepted medical definitions. We would point out that "orthotics" which follows "prosthetics" is not defined in either the American Heritage Dictionary or Webster's Third New International Dictionary (unabridged). Thus, it was proper to ask the expert witnesses their opinion as to the generally accepted medical definitions of "prosthetics" and whether the items in question fell under the definition.

Judgment affirmed. Costs will be paid by the appellant.

FONES, DROWOTA and O'BRIEN, JJ., and CORNELIUS, Special Justice, concur.