**554**

George P. HYATT d/b/a Camden
Water Care Service,
Plaintiff/Appellee,

v.

Dudley W. TAYLOR,
Defendant/Appellant.

Supreme Court of Tennessee,
at Jackson.

April 16, 1990.

Charles W. Burson, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., Pamela Bingham Broussard, Asst. Atty. Gen., Nashville, for defendant/appellant.

Charles L. Hicks, Camden, for plaintiff/appellee.

## OPINION

FONES, Justice.

Plaintiff, taxpayer, sued the Commissioner of Revenue alleging that the State has erroneously assessed sales taxes upon gross receipts from a portion of his business operations. The trial judge found that the "continuous supervision" exemption, applicable to the lease and rental of tangible personal property, applied and thus plaintiff was not liable for the taxes assessed. We reverse.

Plaintiff sells, leases and services water conditioning units to residential, commercial and industrial users. Some of plaintiff's customers buy the units, but those transactions are not in issue in this case. The transactions involved in this suit are leases of the units for a monthly fee, pursuant to a written contract. The contract is not referred to as a lease but it has the following provisions:

THE FOLLOWING TERMS AND CONDITIONS APPLY TO THIS ORDER: (1) Customer disclaims any interest in the goods as fixtures and agrees that WaterCare conditioner(s) shall not be deemed a fixture or affixed to the real estate and shall remain WaterCare property unless purchased by the customer. (2) Customer assumes responsibility of Conditioners safekeeping (normal wear expected) and any tax assessment. (3) Customer agrees that WaterCare has reserved the right to remove Conditioner(s) and that WaterCare is granted the right

to enter premises for the purpose of service or removal of Conditioner(s).

Tenn.Code Ann. § 67–6–102(9) defines lease or rental as the leasing or rental of tangible personal property and "the possession or use thereof by the lessee or renter for a consideration, without transfer of the title of such property."

It is beyond dispute that the water conditioning units involved here are leased and that the tax imposed in Tenn.Code Ann. § 67–6–204(a) was correctly assessed, unless the exemption stated in § 67–6–204(b) applies.

The relevant parts of that Code section read as follows:

**67–6–204. Lease or rental of property.** —(a) It is declared to be the intention of this chapter to impose a tax on the gross proceeds of all leases and rentals of tangible personal property in this state where the lease or rental is a part of the regularly established business, or the same is incidental or germane thereto. The tax is levied as follows:

(1) At the rate of five and one-half percent (5.5%) of the gross proceeds derived from the lease or rental of tangible personal property, as defined herein, where the lease or rental of such property is an established business, or part of an established business, or the same is incidental or germane to the business.

(2) At the rate of five and one-half percent (5.5%) of the monthly lease or rental price by lessee or renter, or contracted or agreed to be paid by lessee or renter, to the owner of the tangible personal property.

(b) If the owner of the property maintains continuous supervision over the personal property being rented or leased, *and furnishes an operator or crew to operate such property*, he is rendering a service, and the same is not subject to sales or use tax. On the other hand, if the owner does *not furnish the crew or operator*, but merely rents the property, and the *lessee operates it himself* for a stated consideration or price, either by the day or week or month, in such case, the sales or use tax would apply as the

lessee has the possession, use and control of the property. If the owner of the property furnishes flight training, he is rendering a service, and the property used therein shall not be subject to sales or use tax.

(emphasis added).

The water conditioning units involved in this case are referred to as auto care units and porta care units. Mr. Hyatt and his son-in-law Richard Wyatt perform all of the installations on the premises of their customers and make all of the service calls. Both Mr. and Mrs. Hyatt, testifying, said that taxpayer has six or seven hundred units installed within a 50–mile radius of Camden. The proof reveals that the water is bad in that area and ingredients that need to be filtered out or otherwise treated vary from property to property. The water of a customer is analyzed and the necessary filtering process or treatment determined.

Mr. Hyatt explained that the auto care unit "is an automatic that we wish would stay there permanent, but, of course, it don't." He said those units had to be "brought in periodically and cleaned." He testified that the porta care units were "changed" every two weeks to a month, and sometimes service calls were made "in between." If the customer calls with a problem, one of the two, Hyatt or Wyatt, makes a service call, otherwise they make a periodic, routine call and service the unit.

On cross-examination, Mr. Hyatt was asked how an auto care unit was "hooked up to say somebody's house", and his response was:

A. Well, you determine what the water is, how much water they're going to use. Then you hook their line from their pressure tank to the unit, go through the unit, come from the unit and go to their line going to their house.

He was also asked, if the unit was working correctly and no repairs were needed, "does it work by itself" and his response was, "It's supposed to, yes, ma'am." Mrs. Hyatt, Mr. Hyatt and two witnesses who had units installed on their property had emphasized that the property owner-cus-

tomer did not turn the unit off or on to make it work nor exercise any "control or supervision" over the unit installed on their property. Mr. Hyatt insisted that he had "possession" of units even though they were installed on the customer's property.

As indicated, the issue is whether the exemption in sub-section (b) of Tenn Code Ann. 67–6–204 applies. The legislature carved out the "continuous supervision" exemption to the tax on leased tangible personal property by enacting Chapter 994, Public Acts 1984, effective 1 July 1984, as an amendment to Tenn.Code Ann. § 67–6–204. The title of Chapter 994, Public Acts 1984 is as follows:

> An act to amend Tennessee Code Annotated Section 67–6–204, relative to taxation of the chartering of aircraft under the sales tax.

■ Exemptions will be construed against the taxpayer and must positively appear and will not be implied. *E.g., LeTourneau Sales & Service, Inc. v. Olsen*, 691 S.W.2d 531, 534 (Tenn.1985).

■ In seeking legislative intent courts should look to the entire statute including the *caption* and policy statement. *Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn.1976).

The trial judge found as follows:

> The facts in this case reveal that the plaintiff retains ownership of the water conditioning units and is responsible for maintaining continuous supervision of the units, to the extent that continuous supervision is required, and that he furnishes an operator or crew to operate the property, to the extent the units require such. The customer maintains no control over the water conditioning unit and does not have any physical contact with the operation of the unit. It is therefore the opinion of the Court that T.C.A. section 67–6–204(b) excludes such rental property from being taxable. If the facts existed that the owner did not furnish the operators of the water conditioning units, but merely rented the property, and the lessee operated it himself for a stated consideration or price, then the sales or use tax would apply pursuant to T.C.A. section 67–6–204(b) as the lessee would

have the possession, use and control of the property.

■ Our conclusions from the undisputed facts differ sharply from those of the trial judge. The water treatment units do not require "an operator or crew." The function of the units is to purify or treat water, and that function is performed automatically by the filter or other treatment installed in the unit. In spite of the denials of the witnesses, it is inescapable that insofar as the unit may be said to be other than self-operating, it is activated to perform its function of delivering treated water to the customer, by the user on the customer's property, turning on a water faucet, which causes the water to leave, "their pressure tank ... go through the unit, come from the unit and go to their line going to their house."

We hold that the legislature intended the exemption created by Chapter 994 Acts of 1984 to be limited to tangible personal property that requires the continuous presence of an operator or a crew in order for the property to perform the function it is designed to accomplish. The primary example intended by the legislature was expressly stated in the last sentence of the Act, the owner of an airplane furnishing a pilot or crew to operate the airplane. Other obvious examples are the leasing of drag lines, backhoes, buses, etc., where the lessor also furnishes the operator.

The trial judge found that the customer "does not have any physical contact with the operation of the unit." We find that the leased property "works by itself" and such "operation," as is required to cause it to produce the result it is designed to accomplish, is performed by the user turning on a water faucet. The taxpayer's two service men do not qualify as operators of six or seven hundred water treatment units located on the property of lessees over a fifty-mile radius from taxpayer's business.

The judgment of the trial court is reversed. This cause is remanded for any proceedings necessary to determine the correct amount of the tax due the State and the entry and enforcement of a decree

consistent with this opinion. Costs are adjudged against taxpayer.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.