**COVINGTON PIKE TOYOTA, INC., Plaintiff/Appellee,**

v.

**Charles E. CARDWELL, Commissioner of Revenue of the State of Tennessee, Defendant/Appellant.**

Supreme Court of Tennessee, at Jackson.

March 2, 1992.

Charles W. Burson, Atty. Gen. & Reporter, John Knox Walkup, Sol. Gen., Cynthia M. Odle, Asst. Atty. Gen., Nashville, for defendant/appellant.

John R. Gregory, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

The issue presented in this sales tax appeal is whether sale of extended warranty contracts on automobiles constitutes "the performing for a consideration of any repair services" within the meaning of Tenn. Code Ann. § 67–6–102(22)(F)(iv), thus making it subject to sales tax. The Commissioner of Revenue assessed sales taxes upon sales of extended warranty contracts to purchasers of new and used automobiles. The assessment was challenged in this action; the Chancellor granted the taxpayer's motion for summary judgment, reduced the tax assessment by the amount imposed upon the extended warranty sales, and found that the Commissioner exceeded his statutory rule-making authority by including such contracts as a repair service. The Commissioner has appealed, contending that the legislature's statutory scheme was to tax warranty contracts, and that the rule was within the Commissioner's rule-making authority.

We disagree and affirm.

## FACTUAL HISTORY

Covington Pike Toyota, Inc. is a Tennessee corporation with its principal place of business in Memphis, Tennessee. In addition to engaging in the business of selling new and used automobiles, Covington sells extended warranty service contracts to cover the cars purchased from them. These contracts, sold by Covington for Toyota Motor Insurance Services pursuant to a written Administrative Services Agreement, entitle the purchasers to certain repair services free of charge at participating Toyota dealerships all over the United States after expiration of the original manufacturer's warranty.

After being audited by the Tennessee Department of Revenue for the period of March 31, 1986, through December 31, 1988, the taxpayer was assessed a deficiency in sales and use taxes, penalty, and interest in the amount of $107,555.00. Most of the deficiency, $106,458.00, was for taxes on sales of extended warranty service contracts to non-residents, while $1,092.00 was for unpaid use taxes, which amount was conceded by the taxpayer. Although the car sales to non-residents were not taxable, see Tenn.Code Ann. § 67–6–315 (1983) [1], and therefore no sales taxes were assessed on the cars, the Commissioner taxed Covington's sales of extended warranty service contracts to cover those cars on the basis of Tenn.Code Ann. § 67–6–102(22)(F)(iv) and (vi) (1983 & Supp.1987) [2]. That section provides that taxable retail sales shall include:

> (iv) The *performing* for a consideration of any *repair services* with respect to any kind of tangible personal property; [and]
>
> . . . .
>
> (vi) The installation of tangible personal property . . . where a charge is made for such installation whether or not such installation is made as an incident to the sale. . . .

The Commissioner interpreted the statute by promulgating Sales and Use Tax Rule 1320–5–1–.54(2) ("Rule 54"), which provides that:

> (2) For the purposes of this rule, *"repair services"* and "repairs" of tangible

---

**1.** Tenn.Code Ann. § 67–6–315 was subsequently repealed by 1989 Tenn.Pub.Acts, ch. 430, § 4.

**2.** The Retailer's Sales Tax Act was amended, effective March 26, 1991, to expressly make "[c]harges for warranty or service contracts" taxable. *See* Tenn.Code Ann. § 67–6–102(22)(F)(ix) (Supp.1991).

personal property shall mean and include any one or all of the following for a user and consumer: work done to preserve or restore to or near the original condition made necessary by wear, normal use, wastage, injury, decay, partial destruction, or dilapidation; the mending, correction, or adjustment made for any defect or defective portion; alterations; refinishing; maintenance, preventive maintenance, or *warranty contracts;* any cleaning that is a necessary part of any repair work; "service calls" where any repair work is done or contemplated; and changes in the size, shape, or content.

The taxpayer brought this action to challenge the assessment in the Shelby County Chancery Court. Following a hearing on July 20, 1990, the Chancellor granted the taxpayer's motion for summary judgment, finding that the Commissioner exceeded his statutory rule-making authority by including warranty contracts in Rule 54 as a taxable repair service under Tenn.Code Ann. § 67–6–102(22)(F)(iv) and (vi). The Chancellor ordered the Commissioner to reduce the total assessment by $106,458.00, and awarded the taxpayer attorneys' fees and expenses pursuant to Tenn.Code Ann. § 67–1–1803 (1983 & Supp.1987).

## ANALYSIS

██ Under Tenn.Code Ann. § 67–1–102 (1983 & Supp.1987) and § 67–6–402 (1983), the Commissioner of Revenue is authorized to prescribe reasonable rules and regulations not inconsistent with the taxing statutes. In the absence of a clear showing that a rule is arbitrary or contrary to statute, a court should not substitute its judgment for the Commissioner's. *Pidgeon–Thomas Iron Co. v. Shelby County,* 217 Tenn. (21 McCanless) 288, 297, 397 S.W.2d 375, 378–79 (1965). However, it is fundamental that the Commissioner cannot enlarge the scope of a taxing statute by regulation, and rules contrary to the express directives of a taxing statute are void. *Volunteer Val–Pak v. Celauro,* 767 S.W.2d 635, 637 (Tenn.1989); *Coca–Cola Bottling Co. v. Woods,* 620 S.W.2d 473, 475–76 (Tenn.1981).

The Commissioner contends that the inclusion of automobile warranty contracts in Rule 54 is entirely consistent with the taxing statutes. The Commissioner argues that the legislature's enactment of Tenn. Code Ann. § 67–6–102(13)(F) and § 67–6–324 in 1963 evidences a clear legislative intent to tax warranty contracts. The Commissioner also argues that this Court should defer to Department of Revenue's interpretation of the statutes in Rule 54 because the rule was promulgated in 1964 and has never been challenged or changed.

██ As the Commissioner correctly points out, administrative interpretations of statutes by the agency charged with enforcement or administration are entitled to great weight in determining the intention of the legislature. *Nashville Mobilphone Co., Inc. v. Atkins,* 536 S.W.2d 335, 340 (Tenn.1976). This is especially true where the administrative interpretations are unchallenged over a long period of time. *Gallagher v. Butler,* 214 Tenn. (18 McCanless) 129, 140, 378 S.W.2d 161, 166 (1964). However, administrative interpretations are not conclusive as to the legislative intent and the ultimate determination addresses itself to the courts. *Nashville Mobilphone,* 536 S.W.2d at 340. Moreover, the rule of giving great weight to administrative interpretations is not applicable where the language of the statute is plain and the meaning is obviously different from the administrative construction. *South Cent. Bell Tel. Co. v. Olsen,* 669 S.W.2d 649, 652 (Tenn.1984); *Liberty Cash Grocers v. Atkins,* 202 Tenn. (6 McCanless) 448, 453, 304 S.W.2d 633, 635 (1957).

Tennessee Code Annotated § 67–6–102(13)(F) (1983 & Supp.1987) lists a number of taxable services and includes in the list "[t]he performing for a consideration of any repair services" and "[t]he installing of tangible personal property." On the other hand, Tenn.Code Ann. § 67–6–324 (1983) exempts from taxation replacement parts or goods provided under warranty:

There shall be exempt from sales tax any replacement parts or goods transferred without cost to a purchaser for the replacement of faulty parts or equipment which prior thereto had been sold under a warranty or guarantee or condition and

upon which original purchase or importation a sales or use tax was paid.

The Commissioner contends it is clear from reading these two statutes together that the legislature intended to tax warranty contracts like the ones at issue in this case. We disagree.

Without the exemption for replacement parts or goods provided in § 67–6–324, the providing of such goods would be subject to sales taxes even though they are transferred without cost pursuant to a warranty. This is because the sales tax imposed on selling tangible personal property is imposed, pursuant to Tenn.Code Ann. § 67–6–202, on "the sales price of each item or article of tangible personal property." "Sales price" is defined, in § 67–6–102(24), as "the total amount for which ... tangible personal property is sold ... valued in money, whether paid in money or otherwise." In the absence of § 67–6–324, the satisfaction of a contractual commitment to provide replacement parts would constitute "the total amount for which [such] tangible property is sold."

■ Although both of these statutes were first passed in 1963, they were enacted by separate Public Acts at separate times with separate legislative sponsors. Moreover, one is a taxing statute and the other is an exemption statute. Taxation and exemption statutes are construed differently. Taxation statutes must be liberally construed in favor of the taxpayer and strictly construed against the taxing authority. *Sky Transpo, Inc. v. City of Knoxville*, 703 S.W.2d 126, 129 (Tenn.1985). Conversely, exemptions are construed against the taxpayer, who bears the burden of proving entitlement to the exemption. *Hyatt v. Taylor*, 788 S.W.2d 554, 556 (Tenn.1990); *Cordis Corp. v. Taylor*, 762 S.W.2d 138, 139 (Tenn.1988).

■ Words employed by the legislature in the enactment of tax statutes are to be taken in their natural and ordinary sense. *Western Pipeline Constr., Inc. v. Dickinson*, 203 Tenn. (7 McCanless) 248, 254, 310 S.W.2d 455, 458 (1958). The words "performing" and "installing," taken in their natural and ordinary sense, mean the carrying out of physical acts. Performing repair services does not include the act of entering into a contractual commitment to provide in the future and on a contingent basis repair services. Under the statute, "[t]he taxable event is the rendering of repair services in Tennessee," *LeTourneau Sales & Serv., Inc. v. Olsen*, 691 S.W.2d 531, 536 (Tenn.1985), not the future and uncertain prospect of having repair services performed in Tennessee. The taxable activity described in § 67–6–102(22)(F)(iv) is a physical activity performed with respect to tangible personal property, and does not include the undertaking of a contractual commitment whereby such services may, or may not, be provided in the future.

■ Statutes levying taxes will not be extended by implication beyond the clear import of the language used, nor will their operation be enlarged so as to embrace matters not specifically pointed out, although standing on a close analogy. *Union Carbide Corp. v. Alexander*, 679 S.W.2d 938, 942 (Tenn.1984); *Tennessee Gas Co. v. McCanless*, 184 Tenn. (20 Beeler) 387, 394, 199 S.W.2d 108, 111 (1947). We conclude that the undertaking of contractual commitments by entering into an extended warranty contract does not constitute "the performing for a consideration of any repair services" within the meaning of Tenn.Code Ann. § 67–6–102(22)(F)(iv); that the inclusion of "warranty contracts" in a list of "repair services" or "repairs" in Department of Revenue Rule 1320–5–1–.54(2) is beyond the Commissioner of Revenue's rule-making authority; and that the foregoing rule is, to the extent of such inclusion, invalid.

Accordingly, we affirm the Chancellor's judgment. The costs of this appeal are taxed to the defendant, Commissioner of Revenue, and this case is remanded to the Chancery Court for a determination of the attorneys' fees and litigation expenses to which the taxpayer is entitled under Tenn.Code Ann. § 67–1–1803.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ.